

**FILED & ENTERED**

**DEC 27 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** sumlin    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Cynthia Pandora Stafford<br><br>                    Debtor(s). | Chapter: 11<br><br>Case No: 2:16-13355-NB<br><br>**MEMORANDUM DECISION GRANTING APPLICATION OF EPPS & COULSON, LLP FOR RELEASE OF SALE PROCEEDS**<br><br><u>Hearing</u>:<br>Date:     September 12, 2017<br>Time:    2:00 p.m.<br>Place:   255 E. Temple St. Rm. 1545<br>              Los Angeles, CA 90012 |

At the above-captioned hearing this court orally granted the "Application of Epps & Coulson, LLP ['E&C'] for Release of Sale Proceeds to Epps & Coulson, LLP" (dkt. 118) over the objection of creditor Steven Roth. A written order memorializing that ruling has been entered on the docket (dkt. 134), which states that relief is granted for the reasons stated on the record, "to be further explained in a forthcoming memorandum decision." This Memorandum Decision supplements and confirms those reasons.[1]

---

[1] For brevity, documents are referred to by docket number and/or trial exhibit number rather than their full title (*e.g.*, "adv. dkt. __" for documents filed in an adversary proceeding, or "dkt. __" for documents filed in

This court previously held that Mr. Roth had waived his own claim against the estate, and alternatively that he was equitably and judicially estopped to assert his claim, all subject to one potential exception. If he could assert some legitimate grounds to reduce the dollar amount of E&C's claim below the net proceeds from the sale of the debtor's house (the "Sale Proceeds"), then he could assert his claim against the balance of the Sale Proceeds <u>after</u> whatever was paid to E&C.

At the above captioned hearing, however, this court was persuaded that not only was Mr. Roth estopped to assert his own claim, but he was also estopped to reduce E&C's claim. Specifically, based on the arguments and evidence at that hearing, this court was persuaded that Mr. Roth had been present at a hearing on May 17, 2016 (the "5/17/16 Hearing") when the debtor had promised through her counsel that there were no other unsecured creditors so E&C would be <u>solely</u> entitled to any Sale Proceeds. But despite hearing the representations made on the record, Mr. Roth failed to disclose his claim.

Alternatively, this court was persuaded that even if Mr. Roth had left the 5/17/16 Hearing before the debtor made it explicit that only E&C would be entitled to any proceeds, he had been present when this court had expressed grave concerns about whether there might be other claims that would reduce the proceeds available to pay E&C. In other words, Mr. Roth was well aware that this court was relying on the absence of other creditors, such as himself, in making its rulings.

If this court had known of Mr. Roth's claim then this court would not have authorized a distribution of $75,000 to the debtor and dismissal of this case. Rather, this court would have taken steps to assure that, in light of the newly discovered misrepresentations by the debtor that concealed Mr. Roth's claim, E&C would have had

---

the bankruptcy case itself). Unless the context suggests otherwise, references to a "chapter" or "section" ("§") refer to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), a "Rule" means one of the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, or other federal or local rule, and other terms have the meanings provided in the Bankruptcy Code, the Rules, and the parties' filed papers.

the opportunity to seek to surcharge the debtor's homestead exemption, or to pursue other sanctions or remedies.

For these reasons, Mr. Roth is judicially estopped to seek any reduction in E&C's claim. These issues are further explained below.

# I. LEGAL STANDARDS

The elements of judicial estoppel are "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Wilcox v. Parker,* 471 B.R. 570, 576 (9th Cir. BAP 2012) (quoting *United States v. Ibrahim,* 522 F.3d 1003, 1009 (9th Cir. 2008); *Cheng v. K&S Diversified Invs., Inc.,* 308 B.R. 448, 452-3 (9th Cir. BAP 2004)).

Courts invoke judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)). Estoppel applies both (a) to affirmative representations or conduct and (b) to silence that induces reliance. *See, e.g., In re Marriage of Recknor,* 138 Cal.App.3d 539, 546-47 (1982); *In re Raanan*, 181 B.R. 480, 485 (C.D. Cal. 1995).

# II. BACKGROUND

### A. The debtor's lies

The debtor repeatedly lied. Her lies have harmed her creditors, including E&C and Mr. Roth.

But the debtor claims to have no funds (*see* dkt. 58, p. 2:14) – or at least it is far easier for E&C and/or Mr. Roth to collect from the remaining proceeds from the sale of her house (the "Sale Proceeds") than to try to collect from the debtor. *See* Order (dkt.

1  93) (approving stipulation to hold remaining Sale Proceeds). So the question is who is
2  entitled to share in the remaining Sale Proceeds.
3  Before turning to that issue it is helpful to review the debtor's lies. First, she
4  executed a written verification (dkt. 17 at PDF pp. 35-36) that her list of creditors was
5  complete. Her counsel reiterated at a hearing on May 3, 2016 that there were no
6  general unsecured creditors. Audio recording (5/3/16) at 2:29:40 p.m. – 2:33:46 p.m.
7  On the basis of those representations this court approved the sale of her house
8  without notice to any unsecured creditors. *See* Notice (dkt. 31), Debtor Decl. (*id.*
9  p. 13:15), *and* Order (dkt. 66, the "Sale Order"). In fact, the debtor had omitted E&C,
10 which had obtained a default judgment against her less than a year before (dkt. 118,
11 p. 2:10-19) and had belatedly been included on the creditor matrix in the debtor's prior
12 bankruptcy case (case no. 2:16-bk-10164-SK, dkt. 10).
13 Second, the debtor lied again after E&C discovered this bankruptcy case. E&C
14 applied both orally and in writing to modify the Sale Order to pay E&C out of the
15 proceeds. *See* Order (dkt. 74) *and* Application (dkt. 76). The debtor then assured this
16 court that, whatever oversight or other cause might have led her to omit E&C, she had
17 no other creditors. She did so both at the 5/17/16 Hearing on E&C's motion, through
18 her counsel (audio recording, 5/17/16, at 4:28 p.m. - 4:29 p.m.), and later through her
19 signed declaration (dkt. 84, ¶ 8).
20 In fact, the debtor had another creditor. As she now fully admits, she owed Mr.
21 Roth's fees under his contract with her. *See* Roth & Stafford Decls. (dkt. 122 at PDF
22 pp. 12-22) and Ex. A & B thereto (dkt. 122 at PDF pp. 24-28).
23 Nevertheless, she executed a stipulation with E&C (dkt. 88) that the remaining
24 funds in her bankruptcy estate would be used to satisfy E&C's judgment, if any, after
25 conclusion of her litigation in State Court to be relieved from the default judgment
26 against her. Specifically, the stipulation provides that, after payment of secured claims
27 and administrative expenses, "The balance of the funds [*i.e.,* the Sale Proceeds] will be
28 held in trust [by her attorneys] and <u>shall be distributed to E&C</u>, subject to [a requirement

that no further distribution would be made absent further order of this court], to pay for the money judgment against the Debtor, if any, resulting from a final adjudication in favor of E&C and against the Debtor in the State Court [litigation]." Dkt. 83, p. 5:20-24 (emphasis added).

On the basis of the debtor's assurances that she had no other creditors, this court approved the Stipulation, thereby authorizing a $75,000 distribution to the debtor. *See* Order (dkt. 93, the "Distribution Order"). That distribution has occurred, leaving a remainder of only about $59,000. *See* dkt. 118, p. 6:9-10 (estimating $59,000 balance).

**B. Mr. Roth's motion for reconsideration, and litigation on that motion**

Several months after this court approved the sale of the debtor's house and distribution of $75,000 to her, Mr. Roth mailed a letter to this court (dkt. 96, the "Reconsideration Motion") that this court interpreted as a motion for reconsideration of the Distribution Order. *See* dkt. 115 at PDF p. 4 (describing procedural history of the Reconsideration Motion). After a hearing on April 25, 2017 this court issued orders (dkt. 113, 115) denying Mr. Roth's Reconsideration Motion, except for requiring E&C to file an application for distribution.

This court found that Mr. Roth had waived his claim against the bankruptcy estate (dkt. 115 at PDF pp. 5-7, part "(2)" "(a)" of analysis) – at least in any contest between him and E&C (as distinguished from any contest between him and the debtor). Alternatively, this court found that Mr. Roth was equitably estopped to assert a claim against the bankruptcy estate (dkt. 115 at PDF p. 7, part "(2)" "(b)" of analysis). Alternatively, this court found that Mr. Roth was judicially estopped to assert a claim against the bankruptcy estate (dkt. 115 at PDF pp. 7-8, part "(2)" "(c)" of analysis).

None of the foregoing prevented Mr. Roth from objecting to E&C's claim, if he could do so on any other grounds. In fact, prior to the hearing on April 25, 2017 this court's tentative ruling directed the parties to address "Mr. Steven Roth's statement (dkt. 103, pp. 9:8-10:6) that he objects, or at least contemplates objecting, to the claim of

Epps & Coulson, LLP against the debtor, which it has been pursuing in State Court." Dkt. 115 at PDF p. 3.

This court could not know in advance what possible grounds Mr. Roth might have to object to E&C's claim, so this court left open the possibility that there might be some legitimate ground to do so. This court recognized that *res judicata* or similar doctrines would prevent the debtor herself from objecting to any judgment obtained by E&C, and might or might not bar any objection by other parties in interest such as Mr. Roth. But it was premature to determine any such issues, so at the hearing on April 25, 2017, this court was persuaded that E&C would not receive an <u>automatic</u> distribution but instead it would be required to apply for a release of the Settlement Proceeds. That would give Mr. Roth an opportunity to object <u>if</u> he had any legitimate grounds to do so.

Pursuant to these procedures, on July 18, 2017 E&C filed its application (dkt. 118) for a release of the Sale Proceeds. That was shortly after it obtained a final State Court judgment against the debtor for $231,260.66. *See* dkt. 118, p. 4:6-10, *and* dkt. 122, Ex. 2. On August 1, 2017 Mr. Roth filed his objection (dkt. 122) to E&C's requested distribution.

Mr. Roth argued that *res judicata* and similar doctrines do not apply (dkt. 122, p. 6:1-12), because he was not a party to the State Court litigation between E&C and the debtor. He also argued that E&C's claim against the debtor was "unconscionable," or at least unreasonable, and should be reduced or denied. E&C's reply brief (dkt. 123) did not address *res judicata* or similar doctrines and instead argued that its claim was reasonable. The parties also filed various other documents, including objections to each others' declarations.The matter came on for hearing on September 12, 2017. At that hearing this court was persuaded that judicial estoppel not only prevented Mr. Roth from asserting his own claim but also prevented him from seeking to reduce E&C's claim. The key issue was the extent to which Mr. Roth was present when the issues regarding E&C's claim and distribution of the Sale Proceeds were addressed. Mr. Roth

asserted that, although he could not specifically recall, he did not believe he was present for whatever was the critical portion of the hearing.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. Mr. Roth was present for the entirety of the 5/17/16 Hearing, and in any event, he does not dispute that he was present for the critical portion of that hearing**

For each of the following alternative reasons this court finds by a preponderance of the evidence that Mr. Roth was present for the entirety of the 5/17/16 Hearing.

**1. Mr. Roth's letter**

Mr. Roth's own letter (dkt. 96-1, pp. 1-2, carryover paragraph) states that he was present at the hearing. It does not say that he was present for only part of the hearing.

**2. Mr. Cohen's uncontested offer of proof**

The attorney for E&C, Jeffrey Aaron Cohen, Esq., stated at the hearing on September 12, 2017 that he personally recalls that Mr. Roth was present for the entire hearing. Mr. Roth stated that he does not recall being present. Mr. Cohen's affirmative recollection outweighs Mr. Roth's lack of recollection.

In making this finding this court recognizes that there was no testimony by Mr. Cohen or Mr. Roth under oath. But this court takes Mr. Cohen's assertion in open court as an offer of proof, and Mr. Roth did not object to this court's reliance on Mr. Cohen's assertion, or ask to cross-examine Mr. Cohen.

**3. Ambiguities in Mr. Roth's letter cut against his latest position, not for it**

Mr. Roth has pointed out that his letter (dkt. 96-1) could be read to imply that he was not present for the entirety of the 5/17/16 Hearing. But this court actually finds that the letter cuts the other way. The letter states:

> I am a creditor …. I submitted a creditor's claim in [the debtor's] prior bankruptcy [case]. …
>
> [After learning of this latest bankruptcy case] I e-mailed a copy of an updated creditor's claim to [the debtor] Ms. Stafford's new attorney. …

> To my surprise, [the debtor's attorney] informed me that [the debtor] did not list me as a creditor in [this case]. He and [the debtor] proceeded to inform me that they were trying to get the bankruptcy [case] dismissed and that I would be paid from the sale of her residence and that if the bankruptcy [case] remained open, all remaining funds would be consumed in attorney's and trustee fees. I was not paid.
>
> [Earlier, on] May 17, 2016[,] a hearing was held [in this case]. <u>I attended that hearing</u>. During the hearing, Ms. Stafford's counsel knowingly falsely represented that there were <u>no other creditors aside from Epps & Coulson</u>, a law firm who filed a creditor's claim. <u>This was false</u> and known to be false [because of Mr. Roth's claim].
>
> I have also been <u>informed</u> that [the debtor] made a deal as a condition of dismissal of [this bankruptcy case] with respect to <u>the funds remaining in her counsel's trust account being held in the event that Epps & Coulson prevails</u> on their claim against [the debtor]. This is not something I approved of or was party to negotiating. As a result, [the debtor] and her counsel deprived me of my rights.
>
> [Dkt. 96-1, pp. 1-2 (carryover paragraph, emphasis altered)]

At the hearing on September 12, 2017, Mr. Roth pointed to the portion his letter stating that he had been "informed" that the Sale Proceeds would go to E&P, which could be read to imply that he learned this information (from some undisclosed communication with somebody) <u>after</u> the hearing. But this court finds that the very fact that the letter does not explain when and how he learned this information suggests that he had been "informed" for some time – in fact, that he had been "informed" at the 5/17/16 Hearing.

One would expect that anyone who learned after the fact that another creditor (E&C) was to receive a priority distribution would have been outraged as soon as they learned that fact, and would have spoken up immediately, with a precise description of when and how they first learned of that priority. But the letter fails to include any such precise description. The opening paragraphs of the letter suggest a more likely scenario: Mr. Roth was aware that E&C would be paid from the Sale Proceeds held by the debtor's attorneys but that did not concern him because he thought he would be paid by the debtor herself out of her homestead exemption. When it turned out, after

several months, that she failed to pay him, he sent his letter to the court seeking reconsideration of the arrangements for E&C.

**4. Alternatively, Mr. Roth does not dispute that he was present for the critical portion of the 5/17/16 Hearing**

Even supposing, for the sake of discussion, that Mr. Roth was not present for the entirety of the 5/17/16 Hearing, at most he claims to have left during a recess in that hearing. Prior to that recess he had more than sufficient notice that E&C might be paid in full before he would receive any distribution.

First, the debtor's attorney argued that E&C was attempting to be paid before other unsecured creditors. Audio recording, 5/17/16, at 2:29:21 p.m. to 2:29:37 p.m. Second, and alternatively, this court made it clear that it was relying on the absence of other creditors in determining how to protect the asserted interests of E&C. Audio recording, 5/16/17, at 2:57:10 p.m. to 2:57:32 ("[this court has] a real concern that the debtor and counsel may have omitted creditors and if there are persons who have claims and, even if those claims are disputed, they haven't gotten notice").

In other words, Mr. Roth had sufficient information to know that E&C might be paid in full before other creditors such as himself, because this court was relying on the absence of other creditors in determining what should be distributed to E&C. This court did in fact rely on the absence of claims like Mr. Roth's belatedly asserted claim in approving the stipulation to pay E&C in full. Dkt. 83, p. 5:20-24. Mr. Roth could have spoken up and informed the court that he was an undisclosed creditor, but he elected not to do so.

**B. Mr. Roth is judicially estopped from seeking to reduce E&C's claim**

**1. Mr. Roth's later position is "clearly inconsistent" with his original position**

Mr. Roth clearly asserted inconsistent positions. As discussed above, he was present during the critical portion of the 5/17/16 Hearing but failed to disclose that he was a creditor of the debtor's estate and would seek to reduce any distribution to E&C.

Then, months later (presumably after the debtor failed to pay him from the proceeds of her homestead exemption), Mr. Roth asserted that he was in fact a creditor and objected to E&C receiving the stipulated distribution on its claim.

### 2. Mr. Roth successfully persuaded this court to adopt his earlier position

In reliance on the understanding that there were no other undisclosed claims against the debtor's estate, and that E&C was the only general unsecured creditor, this court approved the debtor's requests for approval of the sale of her house, dismissal of this bankruptcy case, and distribution of all of the remaining funds to E&C.  This court made it clear on the record at the 5/17/16 Hearing that it was relying on the absence of other creditors in determining how to protect the asserted interests of E&C.  If this court had known of Mr. Roth's claim, then it would not have authorized a distribution of $75,000 to the debtor and dismissal of this case and instead would have taken steps to assure that E&C (or any other potentially undisclosed creditors) would have the opportunity to pursue sanctions or other remedies.

Therefore, the fact that Mr. Roth was present during the critical portion of the hearing, was well aware that this court was relying on the absence of other creditors, such as himself, in making its rulings, and intentionally chose not to disclose his status as a creditor provides sufficient grounds to now find that he is estopped from seeking to reduce E&C's claim so that he could receive some of its distribution.  From the record before it, this court is sufficiently persuaded that Mr. Roth acted intentionally and that his conduct was not the result of any mistaken understanding or inadvertence on his part.  He was fully aware that this court was relying on the absence of creditors like him.

### 3. Allowing Mr. Roth to assert his inconsistent position would allow him to derive an unfair advantage and impose an unfair detriment on this court and E&C

Finally, allowing Mr. Roth's inconsistent positions would allow him a second bite at the apple and impose an unfair detriment on this court and E&C.  Mr. Roth was well

aware that, pursuant to the stipulation, E&C was to be paid from the Sale Proceeds. Rather than speaking up immediately and asserting his purported claim against the debtor's estate, Mr. Roth elected not to raise any issues with E&C's entitlement to the Sale Proceeds.

Had Mr. Roth disclosed his asserted claim against the debtor during the hearing, this Court would have taken other steps to protect not only E&C's rights, but also the rights of any other potentially undisclosed creditors. Now, the property has been sold, the case has been dismissed, and the debtor claims to have no funds (*see* dkt. 58, p. 2:14). Moreover, even if E&C could collect from the debtor, it likely would incur substantial additional costs to do so.

Furthermore, invocation of judicial estoppel is also appropriate to protect the integrity of the bankruptcy process and to prevent creditors, such as Mr. Roth, from making side deals with the debtor and then later seeking redress from the bankruptcy court when those deals have gone sour.

**IV. CONCLUSION**

For the foregoing reasons, Mr. Roth's objection to the distribution of the Sale Proceeds to E&C has been overruled by separate order (dkt. 134).

###

Date: December 27, 2017

Neil W. Bason
United States Bankruptcy Judge

# CERTIFICATE OF SERVICE

I, the below-named deputy clerk of the United States Bankruptcy Court, certify that I placed a true and correct copy of the attached document in a sealed envelope for collection and mailing, no later than the next business day that is not a court-observed holiday, in the United States mail, first class, postage prepaid, and addressed as follows:

**Steven Roth**
5737 Kanan Road, #732
Agoura Hills, CA 91301

**Epps & Coulson, L.L.P.**
Attn: Dawn M. Coulson, Esq.
Attn: Jeffrey A. Cohen, Esq.
707 Wilshire Blvd., Suite 3000
Los Angeles, CA 90017

**Levene, Neal, Bender, Yoo & Brill L.L.P.**
Attn: David B. Golubchik, Esq.
Attn: John-Patrick M. Fritz, Esq.
10250 Constellation Blvd, Suite 1700
Los Angeles, CA 90067

☐ Service information continued on attached page

Date:  12/27/2017    Signature:    /s/ Sharon Sumlin

Deputy Clerk [*printed name*]:    Sharon Sumlin